OPINION OF THE COURT
W. Dennis Duggan, J.
In this case, the court is asked to determine if a husband-father’s (father) multiple forced entries into the marital residence, that he jointly owns with the wife-mother (mother), constitutes a family offense. The court finds that such allegations do state a valid cause of action for a family offense.
*266 This is a CPLR 3211 (a) (7) motion to dismiss the mother’s petition for the failure to state a cause of action. The father’s position is that, as a joint tenant by the entirety of the marital residence, where his wife and two children still live, he is legally entitled to enter the residence at will. There is no court order or separation agreement which would restrict his access to the house. Accordingly, the father maintains that, even accepting the mother’s allegations as true, as the court must on this motion, no family offense took place by his actions.
The mother claims that the father forcibly entered her residence on three separate occasions over a period of a year. Concerning the last entry, the mother asserts that it took place in the presence of her children and there was damage to the house which included wood chiseled out around the front door lock, a storm window that was removed in the rear of the house, a bathroom window that had a large piece of wood chipped off and signs of an attempted forced entry at the back door.
Though somewhat counterintuitive, many serious criminal acts by one family member against another are not “family offenses.” This is because the Legislature has rather narrowly defined that term. Murder, rape, assault in the first degree and endangering the welfare of a child are just a few crimes that are not family offenses. The Legislature has designated a relatively short list of Penal Law offenses to be family offenses. A court is not permitted to expand that list, regardless of how egregious the alleged behavior may be. The leading case on this issue is Matter of Hamm-Jones v Jones (267, AD2d 904 [1999]).
Hamm-Jones affirmed the dismissal of a family offense petition on the grounds that the alleged acts, which would have constituted the class B felony of aggravated sexual abuse in the first degree, did not constitute a family offense defined in the Family Court Act. In support of this holding, the Appellate Division cites to People v Lewis.[1] Although undoubtedly a correct result, upon close reading, Lewis provides very weak precedential support for the Hamm-Jones holding. To see why this is so and to see the 180 degree turn the law has taken in the domestic violence area in the last 40 years, it is worth looking at a bit of history.
*267 Along with Lewis, two other Court of Appeals cases paint a fair historical summary of this issue: People v Williams[2] and People v Nuernberger.[3] 1962 was a busy legislative year. The new CPLR became effective, the Unified Court System (which included the new Family Court) was organized under a new article VI of the State Constitution and the Family Court Act came into effect. The Constitution conferred on the Family Court jurisdiction over “crimes and offenses [as may be provided by law] * * * between spouses or between parent and child or between members of the same family or household.” (NY Const, art VI, § 13 [b] [7].) The Family Court Act provided that law. It granted “exclusive original jurisdiction” to Family Court over “any proceeding concerning acts which would constitute disorderly conduct” or an assault “between members of the same family or household.” (Family Ct Act § 812 [1].) If any of those offenses were first commenced in criminal court, Family Court Act § 813 mandated they be transferred to Family Court. The thinking then was that Family Court was the proper place to resolve almost all violent acts between family members.[4] So, in People v Williams (at 280), the Court noted that:
“The background for the Family Court’s newly acquired ‘family jurisdiction’ was the recognition that many criminal prosecutions were pressed by complainants who were not necessarily concerned with the public aspect of the crimes perpetrated, but instead were using the charges as a means, often inadequate, to improve or otherwise alter their family relationships.”
The Williams Court then went on to quote, at length, the Joint Legislative Committee, Report No. II, on Court Reorganization. That report supported the general proposition that exclusive original jurisdiction of crimes involving spouses was properly put in Family Court because wives were improp *268 erly or excessively using the criminal process to address their problem marriages (Williams, at 280). The decision went on to specifically hold that a number of criminal cases, including one charging burglary with intent to assault, should have been first initiated in Family Court.
People v Williams was succeeded by People v Nuernberger which held that an assault by a father with intent to commit incest on his child should have been brought first in Family Court (Nuernberger at 183 n 3). This brings us up to People v Lewis which finally drew the line. Lewis held that incest itself was not a crime within the exclusive jurisdiction of Family Court.
After looking at the historical record of the case law that supports the case cited to support the holding in Hamm-Jones, one can see the irony. Hamm-Jones, in constricting Family Court’s family offense jurisdiction, rests on a series of cases that held that almost all cases of family violence had to be commenced exclusively in Family Court. Of course, this policy approach changed, but it took time. In 1977, the victim of a family offense was given the choice to commence a proceeding in either Family Court or criminal court (L 1977, ch 449). In 1994, legislation permitted the victim to commence concurrent proceedings in both criminal court and Family Court. (L 1994, ch 222, § 7.) In 30 years the domestic violence compass needle had fully reversed its polarity.
Another counterintuitive aspect to the Hamm-Jones holding is that, in effect, a lesser included offense or inclusory concurrent count analysis is not available to help sustain a petition that alleges assaultive behavior more serious than the crimes designated as family offenses.[5]
“In our view, the fact that the conduct alleged could be generally minimized and characterized as constituting the lesser crimes of assault which are enumerated in Family Court Act § 812 is immaterial, as the petition in fact alleges the more serious, non-enumerated felony proscribed by Penal Law § 130.70 (l)(c). Accordingly the petition should have been dismissed at the outset.” (Hamm-Jones at 906.)
In so holding, the Appellate Division has bestowed on family offense pleadings the worst of both possible worlds. A criminal court is mandated by CPL 300.50 (2) to submit to a jury lesser included offenses if requested by either party and if the lesser included offense is supported by a reasonable view of the *269 evidence. In civil practice, the court is permitted by CPLR 3025 (c) to amend pleadings “before or after judgment to conform them to the evidence, upon such terms as may be just.” In a similar vein, such amendments are specifically authorized in child protective proceedings (Family Ct Act § 1051 [b]). However, family offenses, pleaded too forcefully, would be subject to a Hamm-Jones dismissal motion because they don’t qualify for a lesser included offense analysis.
Hamm-Jones stands for the proposition that family offense petitions, usually completed by self-represented litigants, must, as far as enumerated offenses go, comply with pleading standards usually associated with English common-law writs. If the enumerated offense is not properly pleaded, principles of lesser included offenses or pleadings amended to conform to the proof are not available to save the pleading defect.
On the facts alleged in this case (which essentially constitute a burglary or trespass) there are only two listed offenses which could form the basis of a defined family offense: stalking in the fourth degree (Penal Law § 120.45) and harassment in the second degree (Penal Law § 240.26 [3]). Those sections read as follows:
“Harassment in the second degree
“A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: * * *
“(3) He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose * * *
“Harassment in the second degree is a violation.” (Penal Law § 240.26 [3].)
“Stalking in the fourth degree
“A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:
“1. is likely to cause reasonable fear of material harm to the physical health, safety or property of such person * * *
“Stalking in the fourth degree is a class B misdemeanor.” (Penal Law § 120.45.)
*270 If we chart out each of those sections, it is easier to see how they might apply to this case. It also shows that the elements of each offense are quite similar.
[[Image here]]
As can be seen from the above chart, stalking requires a greater showing of illegitimate behavior and, for that obvious reason, carries a higher level of criminal sanctions.
On any motion to dismiss for the failure to state a cause of action, “the allegations of the pleading are deemed to be true. More than that the pleading will be deemed to allege whatever may be implied from its statements by reasonable intendment; the pleader is entitled to every favorable inference that might be drawn.” (Siegel, NY Prac § 265, at 425-426 [3d ed].) In this case, the father is essentially saying that he owns the house and, because there is no court order prohibiting him from doing so, he can come and go from the residence as he pleases in any fashion he pleases. As a hypothetical proposition, this is true; as a matter of social policy, the Legislature has said that it is not. In both the stalking and the harassment statutes, the Legislature has criminalized certain innocent and otherwise socially acceptable behavior when it is (1) repetitive and (2) meant to cause a specified type of harm to another person.
In this case, the mother’s allegations of three physical break-ins to her home, in which she lives alone with her children, make out a cognizable claim of both stalking and harassment. At trial, the dates, times, frequencies and other specifics of the entries will obviously be factors that may be considered on the issue of intent, knowledge and inflicted harm, as will the fact that the father is a joint owner of the residence. However, at *271 this point, the mother’s claim has sufficient allegation-legs to stand on and the father’s motion to dismiss must be denied.
[Portions of opinion omitted for purposes of publication.]

. 29 NY2d 923 (1972).

. 24 NY2d 274 (1969).

. 25 NY2d 179 (1969).

. For proof that in 1962 we lived in simpler times consider that: “[B]y 1960, more children were living with both of their natural parents than at any other time in world history.” (David Popenoe, Life Without Father, at 22 [Free Press 1996].) In 1960, the number of men living alone in the United States was the lowest in history. In 1983, it was the highest. That 23-year period produced the greatest increase in male criminal behavior in recorded history. (David Blankenhorn, Fatherless America: Confronting Our Most Urgent Social Problem, at 57 [Harper Collins 1996].) The first Family Court Act in 1962 contained just under 50,000 words. It now contains in excess of 185,000 words, an increase of almost 300%!

. See, generally, CPL 300.30 (4); 300.50.