07-0964-cv
Finigan v. Marshall

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued:  January 6, 2009                    Decided: July 28, 2009)

Docket No. 07-0964-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GENEVA FINIGAN,

        Plaintiff-Counter-Defendant-Appellee,

            v.

WILLIAM E. MARSHALL, Individually and
in His Official Capacity as Deputy Sheriff
of the County of Saratoga, New York,

        Defendant-Counterclaimant-Appellant.[*]


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, KATZMANN, and RAGGI, Circuit Judges.

        Appeal from a denial of qualified immunity by the United

States District Court for the Northern District of New York

(David N. Hurd, Judge) in a Section 1983 false arrest action.

Because the defendant had probable cause for the arrest, the

plaintiff suffered no constitutional violation.  We therefore

vacate the district court's judgment with respect to that claim

---

[*]The Clerk of the Court is instructed to amend the official caption in this case to conform to the listing of parties above.

and remand for proceedings consistent with this opinion.

JOHN D. ASPLAND, JR. (William A. Scott, of counsel), FitzGerald Morris Baker Firth P.C., Glens Falls, New York, for Appellant.

DENNIS B. SCHLENKER, Law Office of Dennis B. Schlenker, Albany, New York, for Appellee.

WINTER, <u>Circuit Judge</u>:

William E. Marshall, Deputy Sheriff of Saratoga County, appeals from Judge Hurd's denial of qualified immunity from a claim of false arrest. On December 26, 2003, Geneva Finigan went to her former marital residence, where her estranged husband resided, while he was not at home and without his permission, to remove personal property. Marshall, responding to a 911 burglary-in-progress report, arrived at the scene and took Finigan into custody. After Finigan was released without having been charged with a crime, she brought a Section 1983 action against Marshall in his individual and official capacity on theories of false arrest and abuse of process in violation of rights secured by the Fourth and Fourteenth Amendments. <u>See</u> 42 U.S.C. § 1983. The district court granted Marshall's motion for

summary judgment as to the abuse of process claim,[1] but denied it as to the false arrest claim, concluding that Marshall did not have probable cause and was not entitled to qualified immunity.

We conclude that, even though appellee shared title to the house with her estranged husband, Marshall had probable cause to arrest Finigan. We therefore vacate the district court's judgment with respect to that claim and remand for proceedings consistent with this opinion.

BACKGROUND

The relevant events giving rise to this appeal are not in dispute. See Note 2, infra. They took place in the small community of Stillwater in Saratoga County, New York. In April 2003, Finigan separated from her husband of twenty-eight years, Robert Finigan, and moved out of their marital home ("the premises"). By the fall of that same year, divorce proceedings had begun. As of December 2003, the divorce proceedings remained pending, and Finigan remained a titled owner of her former residence, there having been no equitable distribution of property.

---

[1]The district court dismissed the abuse of process claim on the ground that the undisputed facts showed that Marshall had not issued any legal process against Finigan. This portion of the district court's decision is not before us on this appeal. The district court also denied Marshall's motion for leave to apply for attorney's fees pursuant to 42 U.S.C. § 1988.

As is common in a small community, the major players in the relevant events had overlapping personal histories. Robert Finigan was a member of the town ambulance corps and occasionally interacted socially with Marshall. Robert Wood, Robert Finigan's brother-in-law and neighbor, was Marshall's close friend. Marshall, Robert Finigan, and Geneva Finigan all attended the same high school.

On or around December 21, 2003, appellee learned that her future ex-husband would be away for the Christmas holidays. Although aware that her husband had changed the locks, she decided to remove some items without his knowledge.

Finigan went to the premises on December 24, 2003, and called a locksmith. She showed him her driver's license listing the premises as her address and falsely told him she had lost her keys. He then opened the back door for her. After removing a few items of personal property, Finigan left the premises, leaving the basement door unlocked.

On December 26, 2003, Finigan, accompanied by several family members, including her brother, Everett Folmsbee, returned to the premises with a van to retrieve more personal property such as furniture, appliances, and linens. After about an hour, Finigan loaded the van and drove to a friend's house where she planned to store the property.

4

Meanwhile, Marshall, who was on patrol approximately twenty-five miles away in Galway, responded to a report of a burglary-in-progress in Stillwater.  Upon arrival, he recognized the premises as the residence of Robert Finigan.  He had personal knowledge that Robert Finigan resided there alone, that Geneva Finigan had moved out sometime before, and that divorce proceedings were pending.  Marshall also recognized Geneva Finigan's brother, Folmsbee, and asked his purpose for being on the premises.  Folmsbee explained that he was helping his sister retrieve some items.  Shortly thereafter, Robert Finigan's brother-in-law and neighbor, Robert Wood, arrived on the scene. Wood told Marshall that he was watching the premises for Robert Finigan while Finigan was away for the holidays.  Because his brother-in-law had changed the locks, Wood expressed uncertainty as to how Geneva Finigan had obtained access to the premises.

After having unloaded the van at her friend's house, Geneva Finigan received a phone call from Folmsbee, who informed her that "Bill Marshall [was at the premises] to arrest [her]." Geneva Finigan returned to the premises where Marshall inquired whether she had removed property.  She admitted that she had done so without her husband's knowledge.  Marshall then directed her to get into the back seat of his patrol car, whereupon he resumed his questioning.  Geneva Finigan informed him that she had legal

title to the residence, that she was removing only her own property, and that her divorce attorney told her she could do so. Marshall made no attempt to verify whether Finigan held legal title, nor did he make any other inquiries at the scene. Instead, he transported her to the Stillwater police station where she was read her rights. At some point, either just before Marshall placed Finigan under arrest or at the station, Finigan informed Marshall that she had used the services of a locksmith to enter the premises. Marshall ultimately released Finigan, who was never charged with a crime.

Marshall moved for summary judgment asserting the existence of probable cause or qualified immunity. The district court denied the motion. It concluded that Marshall arrested Finigan when, armed and uniformed, he directed Finigan to get into the back seat of his patrol car. As to probable cause, the district court noted that Marshall had failed to investigate whether Finigan was legally entitled to enter the residence by virtue of her title to the property and had failed to corroborate Wood's statements indicating that Finigan did not have permission to enter the premises. Consequently, the court concluded that it was "difficult to envision any crime of which [Finigan] may have been guilty." Therefore, Marshall did not, as a matter of law,

have probable cause to arrest Finigan and was therefore not entitled to qualified immunity.

                    DISCUSSION

On appeal,[2] Marshall contends that the district court erred when it denied his motion for summary judgment because he had probable cause to arrest Finigan for burglary, or in the alternative, because he was entitled to qualified immunity. Finigan argues that because she was a titled owner of the real and personal property at issue, Marshall possessed no reliable information that Finigan had committed, or was about to commit, a

---

[2]As a general rule, the denial of summary judgment is not immediately appealable. See 28 U.S.C. § 1291. The collateral order doctrine, however, allows review of a district court's denial of summary judgment on the ground that the movant was not entitled to qualified immunity "'to the extent that the district court has denied the motion as a matter of law.'" Moore v. Andreno, 505 F.3d 203, 207 (2d Cir. 2007) (quoting O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 38 (2d Cir. 2003)). This exception to the ordinary rule of finality effectuates the privilege's underlying purpose, which is not merely to provide a defense to liability, but to provide immunity from suit. Walczyk v. Rio, 496 F.3d 139, 153 (2d Cir. 2007). The existence of probable cause and a defendant's entitlement to qualified immunity may be determined as a matter of law to the extent that the issues may be resolved on undisputed facts establishing the pertinent events and the knowledge of the officer at the time of the arrest. See Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 760-61 (2d Cir. 2003).
    The principal discrepancy between the parties' versions of the events is with respect to whether Finigan told Marshall that she had called a locksmith to let her into the premises before or after she was arrested. Because this issue is irrelevant to Marshall's claims, our jurisdiction is not in question. See Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ("[W]e have jurisdiction to review a denial of qualified immunity to the extent it can be resolved 'on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find.'" (quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996))).

7

crime.  Thus, Finigan argues that Marshall did not have probable cause for the arrest and is not entitled to qualified immunity.

For the reasons that follow, we conclude that Marshall had probable cause to arrest Finigan.

We review the district court's denial of a summary judgment motion based on a defense of qualified immunity de novo.  Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).  We limit ourselves to undisputed facts establishing the defense as a matter of law.  Id. (citing Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992)).

Before deciding whether Marshall is entitled to qualified immunity, we must decide whether Finigan "has alleged a constitutional violation at all."[3]  Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001); see also Jones, 465 F.3d at 55.  Finigan cannot recover for false arrest if Marshall had probable cause to arrest her.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  If facts supporting probable cause to arrest are ultimately found not to have existed, an arresting officer will nonetheless be entitled to immunity from suit based

---

[3]A plaintiff must also show that the right violated was clearly established.  The Supreme Court recently held that while lower courts are no longer required to address these prongs in any particular order, it recognized that it is "often beneficial" to do so.  Pearson v. Callahan, 555 U.S. ----, ----, 129 S. Ct. 808, 818 (2009).  Doing so here is beneficial because the plaintiff is unable to establish the violation of a constitutional right, and thus, we need not reach the second prong.

on "arguable probable cause," which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that "'officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).

In determining whether there was probable cause, our inquiry is an objective one that focuses on the facts available to the arresting officer at the time of the arrest. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). Probable cause exists when, based on the totality of circumstances, the officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007); see also Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Such is the case here.

Under New York law, a person is guilty of burglary in the second degree when he or she "knowingly enters or remains unlawfully in a [dwelling] with [the] intent to commit a crime therein." N.Y. Penal Law § 140.25. Criminal trespass is a lesser included offense of burglary. People v. Devonish, 843

9

N.E.2d 1120, 1120 (N.Y. 2005).  A person commits criminal trespass in the second degree "when he [or she] knowingly enters or remains unlawfully in a dwelling."  N.Y. Penal Law § 140.15.  "A person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so."  Id. § 140.00(5).

In our view, there was probable cause to arrest Geneva Finigan for criminal trespass in the second degree.  At the time of the arrest, Marshall knew the following:  a report of a burglary at the address of the premises had been made; Geneva Finigan no longer resided at the premises; a divorce proceeding between Robert and Geneva Finigan was pending; Robert Finigan had changed the locks; Robert Finigan was away; Geneva Finigan had entered the premises and had removed property; and a neighbor, who was watching the house for Robert, had no idea how Geneva entered the premises.  It was evident from the neighbor's statements, and from Geneva's own statements that her entry was based on her own legal rights, that Robert had not consented to her entry into the premises.  See Panetta, 460 F.3d at 396.  That information constituted probable cause for an arrest for criminal trespass.

Appellee's argument rests heavily on her having shared title to the home and ownership of the items removed and on Marshall's

10

failure to verify that claim of title. However, the issue is her right of entry under the circumstances described above, and title does not provide an absolute right to enter at times of one's choosing without the permission of an occupant.

The principal purpose of New York's burglary statute is the protection of habitation rights, and the right of entry does not turn solely on the existence of an ownership interest. Where title to a property is jointly held as tenants by the entirety but one spouse is the sole resident, the consent of the non-resident spouse alone does not, as a matter of law, establish a license or privilege to enter. To the contrary, under New York law, a non-resident spouse who is a titled owner of a house and enters without the permission of the resident spouse may be convicted of burglarizing his or her own property. People v. Glanda, 774 N.Y.S.2d 576, 581-82 (N.Y. App. Div. 2004) ("an owner can properly be convicted of burglarizing premises he owns but which are occupied by another") (collecting cases); cf. Milillo v. Milillo, 748 N.Y.S.2d 850, 851, 853-54 (N.Y. Fam. Ct. 2002) (rejecting husband's argument that as former resident and joint tenant by the entirety of marital residence, he was legally entitled to enter at will, on facts that "essentially constitute[d] a burglary or trespass" in a family offense action); People v. Cheyne, 402 N.Y.S.2d 971, 972 (N.Y. Dist. Ct.

11

1978) (upholding trespass conviction of divorced husband despite honest belief of license or privilege to remain after exclusive possession of premises awarded to divorced wife). This is the case even though tenants by the entirety usually share equal rights to possess and enjoy the property. Glanda, 774 N.Y.S.2d at 581. Therefore, while title might have enabled Finigan to obtain a court order affording supervised entry and removal of the property, her resort to self-help stands on a different footing.

However paradoxical such a legal rule may seem at first blush, a contrary rule could lead to circumstances fraught with danger.[4] Geneva Finigan's particular entry into the premises might have been without great danger, but other spouses in divorce proceedings may have less reliable guarantees that the estranged spouse will be absent from the premises and will not use force to resist entry. And angry title-holding spouses may attempt to enter precisely because the other spouse is on the premises. The rule would also seem to permit looting of the premises by non-resident spouses by requiring officials to stay

---

[4]The New York Court of Appeals has emphasized the strong public policy against self-help by forcible means to enter premises by one who believes them wrongfully closed. See People v. Horelick, 285 N.E.2d 864, 865 (N.Y. 1972) ("[U]ltimately, analyses related to claims of right by owners and others entitled to rights of entry under property law [are immaterial]. Even such property rights, by still being subject to restrictions on the use of force, emphasize the policy against self-help by force or other illegal methods.").

12

their hand while checking on title to real estate or personal property.  See People v. Hudson, 658 N.Y.S.2d 800, 801 (N.Y. Co. Ct. 1997).[5]

Appellee also argues that, for probable cause to exist, Marshall needed to conclude at the time of the arrest that Finigan had entered the premises knowing that she had no license or privilege to enter.  As a corollary, because a reasonable belief of license or privilege to enter negates the "knowing" unlawful entry element of the criminal trespass statute, Finigan argues that her belief that her legal title conferred a right of entry to the premises defeats a finding of probable cause as a matter of law.

These arguments incorrectly assume that an officer must have proof of each element of a crime and negate any defense before an arrest.  However, even if the total sum of evidence here might not persuade a jury to convict for criminal trespass because of Finigan's belief in her right of entry, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their

---

[5]Finigan makes much of the myriad connections between Marshall and the various actors in this small town drama.  To the extent that this concern is intended to allege an improper motive for the arrest, we note that our inquiry here is an objective one.  When an officer confronted with a claim of unlawful arrest establishes probable cause, we do not consider his motivation in making the arrest.  See Singer, 63 F.3d at 120.  This is not to suggest that, apart from the various relationships, there is any evidence of an improper motive.

13

function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). The facts available at the time of the arrest need only cause a person of reasonable caution to believe that a crime had been or was about to be committed, a threshold that was easily met here.

                              CONCLUSION

For the foregoing reasons, we conclude Marshall had probable cause to arrest Finigan. We therefore vacate the district court's judgment with respect to that claim and remand for proceedings consistent with this opinion.