08-3150-cv
Amore v. Novarro

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: July 16, 2009                Decided: June 22, 2010

Amended on Petition for Rehearing: October 12, 2010)

Docket No. 08-3150-cv

-------------------------------------

JOSEPH AMORE,

Plaintiff-Appellee,

- v -

ANDREW NOVARRO,

Defendant-Appellant,

CITY OF ITHACA,

Defendant.[*]

-------------------------------------

Before:    SACK and B.D. PARKER, Circuit Judges, and GOLDBERG, Judge.[**]

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge). The district court denied police officer Andrew Novarro's motion for summary judgment on a false arrest claim, ruling that Novarro was not entitled to qualified immunity

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

[**] The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

for making an arrest pursuant to a state loitering statute that was published as part of the New York Penal Law at the time of the arrest but that had been held unconstitutional by the New York Court of Appeals eighteen years prior to the arrest. We conclude that the district court erred in deciding that it would have been clear to a reasonable officer in Novarro's position that making the arrest was unlawful. We therefore reverse the order of the district court and remand the cause with instructions to grant the summary judgment motion based on qualified immunity and to dismiss the complaint against Novarro, only.

Reversed and remanded.

JONATHAN M. BERNSTEIN, Goldberg Segalla LLP, Albany, NY, for Defendant-Appellant.

EDWARD E. KOPKO, Wiggins & Kopko, LLP, Ithaca, NY (Guttman & Wallace Law Firm, Ithaca, NY, on the brief), for Plaintiff-Appellee.

Adam R. Pulver, Matthew D. Brinckerhoff, Katherine R. Rosenfeld, Emery Celli Brinckerhoff & Abady LLP, New York, NY, for Plaintiff-Appellee (on petition for rehearing).

Corey Stoughton, Arthur Eisenberg, New York Civil Liberties Union Foundation, New York, NY, and Hayley J. Gorenberg, Lambda Legal Defense and Education Fund, Inc., New York, NY, for amici New York Civil Liberties Union and Lambda Legal Defense and Education Fund, Inc., respectively, in support of Appellee's petition for rehearing.

2

SACK, <u>Circuit Judge</u>:

Defendant-Appellant Andrew Novarro, an Ithaca, New York, police officer, appeals from that part of a memorandum decision and order dated March 28, 2008, by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., <u>Judge</u>) denying his motion for summary judgment on a false arrest claim brought by plaintiff-appellee Joseph Amore under 42 U.S.C. § 1983. The claim is based on Novarro's arrest of Amore pursuant to New York Penal Law § 240.35(3), which, on its face, prohibits loitering in a public place for the purpose of soliciting another person to engage in "deviate" sexual behavior.[1] Amore alleges that his apprehension constituted a false arrest because the statute, although then officially and unofficially published as currently effective law, had been ruled unconstitutional by the New York Court of Appeals eighteen years before.

The district court concluded that Novarro was not entitled to qualified immunity: Amore had a clearly established

---

[1] At the time of Amore's arrest, the statute in question, New York Penal Law § 240.35, read in pertinent part:

   [Criminal] Loitering

      A person is guilty of loitering when he:

   ....

         3. Loiters or remains in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . .

<u>Id.</u>

3

constitutional right to be free from unlawful arrest, and it would have been clear to a reasonable officer in Novarro's position that making an arrest under section 240.35(3) after it had been held to be unconstitutional by the New York Court of Appeals in People v. Uplinger, 58 N.Y.2d 936, 460 N.Y.S.2d 514, 447 N.E.2d 62 (1983) (Mem.), was unlawful.

We disagree. We conclude that Novarro is entitled to qualified immunity under the circumstances of this case. We therefore reverse that part of the district court's order dismissing Novarro's motion for summary judgment on the false arrest claim based on qualified immunity, and remand the cause with instructions to grant the motion. The action against the City of Ithaca may proceed.

**BACKGROUND**

Plaintiff Joseph Amore encountered defendant Andrew Novarro on October 19, 2001, at around 9:00 p.m. in Stewart Park, a public park in Ithaca, New York. Novarro was there as an undercover police officer, sitting in a parked unmarked car, watching for drug activity. Amore, having been in the park for some while and not knowing who Novarro was or what he was doing there, approached his car, engaged him in conversation, and then offered to perform a sexual act on him.

Novarro identified himself as a police officer and asked Amore for identification, which he produced. Novarro told Amore that he did not have a ticket to write out and would have to call for "backup," which he proceeded to do.

4

While they waited for another police officer to arrive, Novarro told Amore that he was being charged with "loitering for the purpose of deviant [sic[2]] sexual activity." Deposition of Andrew Novarro ("Novarro Dep.") at 20. Novarro told Amore that "they were cracking down on this kind of activity in the park." Deposition of Joseph Amore ("Amore Dep.") at 36.

Novarro testified, and it is not disputed before us, that the New York police academy he had attended issues a copy of the New York Penal Law to, inter alia, every Ithaca police officer.[3] Most officers carry a copy of it with them on duty in the form of a looseleaf booklet containing the text of the Penal Law published by Gould Publications, Inc.[4] The Ithaca Police Department furnishes each of its officers with yearly updates consisting of a stack of substitute pages reflecting new laws that have been enacted during the previous year, or deleting laws that are no longer in effect. When the officers receive these yearly updates, they are supposed to remove those pages that have become outdated and insert into the booklet, in their stead, the substitute pages reflecting the current law. The booklet is

---

[2] The statute refers to "deviate" sexual activity, see footnote 1, supra.

[3] There are multiple New York police academies. From the portions of his deposition testimony that have been incorporated into the record on this appeal, it appears that Novarro received his police training at the Corning Community College. See http://criminaljustice.state.ny.us/ops/training/zoneacademies/zone_12.htm (last visited April 19, 2010).

[4] Now "LexisNexis Gould Publications." See http://www.lexisnexis.com/gould/ (last visited April 19, 2010).

unannotated, i.e., without interpretations, case law, or the like. When the backup officer arrived, because Novarro had left his own copy in his office, the officer gave Novarro a copy of this version of the Penal Law, which Novarro then consulted.

Novarro then drove from the park to the police station to prepare an accusatory instrument reflecting the citation issued to Amore. It alleged that Amore had violated section 240.35(3) by "loitering . . . in a public place for the purpose of . . . soliciting another person to engage[,] in . . . sexual behavior of a deviate nature, TO WIT: . . . [Amore] did solicit [Novarro] to engage in deviate sexual intercourse." Accusatory Instrument, No. 01-13431 (Ithaca City Ct. Oct. 19, 2001) ("Accusatory Instrument"). Novarro then issued Amore an appearance ticket pursuant to the Penal Law, and released him from custody. The appearance ticket required Amore to appear in Ithaca City Court to answer a charge of "loitering" in violation of New York Penal Law § 240.35(3).

Novarro then had Amore formally charged with a violation of that offense. See Accusatory Instrument.

Some time later, the city prosecutor informed Novarro that Amore had moved to dismiss the charge against him based on Uplinger, a 1983 ruling by the New York Court of Appeals holding, in a memorandum decision, that the loitering statute pursuant to which Amore had been arrested, New York Penal Law § 240.35(3), was unconstitutional. The city prosecutor told Novarro that she

6

therefore could not continue the prosecution. It is undisputed that Novarro was unaware, prior to this conversation, that the statute had been held to be unconstitutional.

On November 7, 2001, the prosecutor moved to dismiss the charge against Amore based on Uplinger, as she had told Novarro she would. The Ithaca City Court granted the motion on that basis. The court observed that it was "puzzling" that the statute continued to be published in the McKinney's Consolidated Laws of New York Annotated -- an annotated compendium of New York statutes that is separate from, and more formal and complete than, the unannotated booklet provided to Novarro and other officers by the police academy -- "as if it is still a viable statute." People v. Amore, No. 01-36459 (Ithaca City Ct. Nov. 15, 2001). "It is hard to understand why the Legislature would continue this statute on the books, given that it is now close to 20 years since it was determined to be unconstitutional." Id.

Some two and one-half years later, on February 12, 2004, Amore filed a complaint in the United States District Court for the Northern District of New York against Novarro and the City of Ithaca seeking damages pursuant to 42 U.S.C. § 1983. His claims against Novarro were for false arrest, malicious prosecution, abuse of process, and violation of his right to equal protection. His claims against the city were made pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), for failure to train city employees and for maintaining an

7

improper policy, custom or practice of permitting officers to make arrests under the unconstitutional statute.

The defendants moved to dismiss the complaint. Amore opposed the motion, filing a cross-motion for partial summary judgment on the issue of liability.

On March 28, 2008, the district court denied Amore's cross-motion for summary judgment with respect to all claims, and, treating the defendants' motion as a motion for summary judgment, granted the defendants' motion in part and denied it in part. The district court granted the motion on the malicious prosecution, abuse of process, and equal protection claims against Novarro, and the maintenance of an improper policy or custom claim against the city. See Amore v. City of Ithaca, No. 04 Civ. 176, 2008 U.S. Dist. LEXIS 26035, *10-*13, *21-*22 (N.D.N.Y. Mar. 28, 2008).[5] None of those claims are at issue on this interlocutory appeal.

The district court denied summary judgment on the false arrest claim, however. See id. The court reasoned that Novarro lacked probable cause to arrest Amore under section 240.35(3) because the New York Court of Appeals had declared that statute unconstitutional in Uplinger. Id. at *14-*16.

The district court acknowledged that such a situation presents a "difficult choice" for a police officer because "[a] common sense reading of [section 240.35(3)] would place [Amore's]

---

[5] Not available on WestLaw.

8

actions squarely within the purview of [that provision]." Id. at *20-*21. It also recognized that "Novarro would have had to conduct legal research or seek expert advice in order to discover the statute's invalidity." Id. at *21.[6] The court concluded nonetheless that Novarro was not entitled to qualified immunity with respect to the false arrest claim because Amore's "right to be free from unlawful arrest under § 240.35(3) was clearly established at the time that he was arrested." Id. at *15. In the court's view, in light of Uplinger, it was objectively unreasonable for Novarro to believe that the arrest was lawful, because courts "must at least hold [public] officials to a basic standard of awareness where the state's highest court has pronounced a statute facially unconstitutional."[7] Id. at *16.

The district court also denied the motion for summary judgment on the failure-to-train claim against the city. The court based its decision on evidence submitted by Amore to the effect that the city knew that its police officers operating in Stewart Park would encounter individuals soliciting and engaging

---

[6] The district court made these remarks concerning the difficulty of Novarro's position in the context of analyzing the failure-to-train claim, discussed below, rather than in the context of the false arrest claim. They are plainly pertinent to the issue of qualified immunity for the false arrest claim, however.

[7] The district court also concluded that there were triable issues of fact as to whether Novarro had probable cause to arrest Amore for disorderly conduct under New York Penal Law § 240.20 or second-degree harassment under New York Penal Law § 240.26(3) based on Amore's sexual encounter with a stranger in the park just prior to his interaction with Novarro. Id. at *9, *16.

9

in sex.  See id. at *18-*19.  At argument before this Court, the parties represented that the failure-to-train claim against the city was still pending.  It is not before us on this appeal.[8]

On June 9, 2008, the district court denied Amore's motion to reconsider the denial of his motion for summary judgment on the false arrest claim.  See Amore v. City of Ithaca, No. 04 Civ. 176, 2008 U.S. Dist. LEXIS 453 (N.D.N.Y. June 9, 2008).

On June 17, 2008, the defendants petitioned the district court for leave to appeal from the March 28, 2008, memorandum opinion and order.  The court denied leave to appeal. On October 1, 2008, we concluded that we had jurisdiction over an appeal of the March 28 order to the extent that it denied Novarro qualified immunity on the false arrest claim, and directed the Clerk of the Court to issue a briefing schedule for an appeal on the qualified immunity question.

The sole question on appeal, then, is whether Novarro is entitled to qualified immunity on the false arrest claim.

---

[8]  We note that the attorney for Novarro and the attorney for the city are one and the same, and that at argument the parties speculated briefly about whether the outcome of this appeal would have any effect on the pending case against the city, suggesting the possibility of some conflict arising out of the dual representation.  We emphasize, however, that the case against the city is not before us on this appeal -- indeed, as explained infra, we would lack jurisdiction over such an interlocutory appeal from the denial of summary judgment absent the collateral order doctrine, which the case against the city does not implicate -- and we of course offer no opinion as to whether, or if it does how, the resolution of this appeal affects that case.

**DISCUSSION**

I. Jurisdiction and Standard of Review

"As a general rule, the denial of summary judgment is not immediately appealable." Finigan v. Marshall, 574 F.3d 57, 60 n.2 (2d Cir. 2009) (citing 28 U.S.C. § 1291). "The collateral order doctrine, however, allows review of a district court's denial of summary judgment on the ground that the movant was not entitled to qualified immunity to the extent that the district court has denied the motion as a matter of law." Id. (internal quotation marks omitted).

Our jurisdiction is limited such that we may only review Novarro's assertion of qualified immunity based on "stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district court deemed available for jury resolution." Kelsey v. County of Schoharie, 567 F.3d 54, 60 (2d Cir. 2009) (internal quotation marks omitted). While "we must examine whether a given factual dispute is 'material' for summary judgment purposes, we may not review whether a dispute of fact identified by the district court is 'genuine.'" Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006) (internal quotation marks omitted).

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

11

The court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in his favor. See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). We review the district court's denial of summary judgment on qualified immunity grounds, as in other contexts, de novo. See, e.g., Moore v. Andreno, 505 F.3d 203, 208 (2d Cir. 2007).

II.  Qualified Immunity

Qualified immunity is an affirmative defense designed to "protect[] the [defendant public] official not just from liability but also from suit . . . thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial." X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999). In explaining the justification for the provision of qualified immunity to government officers, we have looked to Judge Learned Hand's discussion of absolute immunity in Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949 (1950). See Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 129 (2d Cir. 2004) ("The justification for the common law privilege of qualified immunity has been eloquently described by Judge Learned Hand . . . ."). Judge Hand explained that "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the

12

public interest calls for action which may turn out to be founded on a mistake . . . ." Gregoire, 177 F.2d at 581. He emphasized the need to avoid "subject[ing] those who try to do their duty to the constant dread of retaliation." Id. at 581.[9]; see also Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) (quoting Gregoire in describing the possible effect of "fear of being sued" on public officials' performance of their duties).

We have since reiterated our concern that for the public benefit, public officials be able to perform their duties unflinchingly and without constant dread of retaliation. See, e.g., Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) ("Qualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not 'unduly inhibit officials in the discharge of their duties' by saddling individual officers with 'personal monetary liability and harassing litigation.'" (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). And the Supreme Court has described the "central purpose" of qualified immunity as preventing threats of liability that would be "'potentially disabling'" to officials. Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow, 457 U.S. at 818).

---

[9] The vitality of the holding of Gregoire is in doubt, see Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007), reversed and remanded in part on other grounds, Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), but its explanation of the basis for immunity for public officials under some circumstances remains sound, see, e.g, Van de Kamp v. Goldstein, 129 S. Ct. 855, 859-60 (2009).

13

In light of these considerations, we have developed a standard for determining whether an officer is entitled to qualified immunity that is "forgiving" and "'protects all but the plainly incompetent or those who knowingly violate the law.'" Provost, 262 F.3d at 160 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "[Q]ualified immunity . . . is sufficient to shield executive employees from civil liability under § 1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights." Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010); see also, e.g., Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010) ("Even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." (internal quotation marks omitted)); Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009) ("A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity.").[10]

---

[10] For several years, under Saucier, courts were required to address first whether the facts alleged disclosed a constitutional violation at all, and only then decide whether it was clearly established and whether the defendant's acts were objectively reasonable. That is no longer required. See Pearson, 129 S. Ct. at 813 ("We now hold that the Saucier procedure should not be regarded as an inflexible requirement and

14

"Ordinarily, determining whether official conduct was objectively reasonable requires examination of the information possessed by the officials at that time (without consideration of subjective intent)." Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 106 (2d Cir. 2003). "In an unlawful arrest action, an officer is . . . subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" Provost, 262 F.3d at 160 (quoting Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Pierson v. Ray, 386 U.S. 547, 555 (1967).[11]

III.  Novarro's Qualified Immunity

We assume here, not without reason, that when Novarro arrested Amore he violated a constitutional right of Amore not to be arrested for activity made criminal by section 240.35(3), which had been held unconstitutional by the New York Court of Appeals.  Cf. Lemon v. Kurtzman, 411 U.S. 192, 207-08 (1973)

---

that petitioners are entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional.").

[11]  Cf. Gilbert & Sullivan, Pirates of Penzance:

When constabulary duty's to be done, to be done.
Ah, take one consideration with another, with another,
A policeman's lot is not a happy one.

Id., Act II, available at
http://math.boisestate.edu/GaS/pirates/web_op/pirates24.html
(last visited April 19, 2010).

(plurality opinion) (indicating that a statute is a legal basis for arrest only "[u]ntil judges say otherwise").  But the question for purposes of determining Novarro's entitlement to qualified immunity is whether it was objectively reasonable for him to arrest Amore while failing to realize that the statute he was attempting to enforce had been held unconstitutional.

To spare police officers the unenviable choice between failing to enforce the law and risking personal liability for enforcing what they reasonably, but mistakenly, think is the law, we generally extend qualified immunity to an officer for an arrest made pursuant to a statute that is "on the books," so long as the arrest was based on probable cause that the statute was violated.[12]  See Crotty, 346 F.3d at 105 ("Officials charged with enforcing a statute on the books . . . are generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid."); see also id. at 102 ("In order to determine whether [the defendant] may prevail, we consider many factors, but rely primarily on one factor as particularly persuasive: that the challenged conduct involved enforcement of a presumptively valid statute."); Vives v. City of New York, 405 F.3d 115, 117 (2d Cir. 2005) (distinguishing Crotty from "case which did not involve state officials acting under the color of a properly-enacted

---

[12]  While the cases establishing this principle do not involve statutes that had previously been held unconstitutional by courts at the time of enforcement, and therefore do not directly control this case, the principle is nonetheless material to our analysis here.

16

statute") (emphasis in original); <u>Shero v. City of Grove, Okl.</u>, 510 F.3d 1196, 1204 (10th Cir. 2007) (referring to reliance on statute as "extraordinary circumstance[]" that could "so prevent[] the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right").

We noted some years ago that:

> [I]t has long been clearly established that an arrest without probable cause is a constitutional violation.  Nonetheless, the arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met.

<u>Robison v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987) (citations omitted).

Similarly here, we assume that it is clearly established that an arrest under a statute that has been authoritatively held to be unconstitutional is ordinarily a constitutional violation.  And it is clear that Amore was sufficiently detained for him to have been "arrested" for purposes of bringing this false arrest claim,[13] and that the

---

[13]  "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." <u>Davis v. Rodriguez</u>, 364 F.3d 424, 433 (2d Cir. 2004).  "Under New York law, a plaintiff claiming false arrest must show, <u>inter alia</u>, that the defendant intentionally confined him without his consent and without justification." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  Novarro

17

statute under which he was arrested had been held by the New York Court of Appeals to be unconstitutional.

The question is whether it was nonetheless objectively reasonable for Novarro, as the arresting officer, to have believed that the statute in question remained fully in force and that his arrest was therefore not a violation of Amore's constitutional rights.

Section 240.35(3) made it a crime to loiter "in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature."[14]  Uplinger, 58 N.Y.2d at 937, 447

---

conceded that Amore was detained, contrary to his express desire to be released, while Novarro compelled him to produce identification and waited for backup to arrive.

In a letter submitted after argument pursuant to Federal Rule of Appellate Procedure 28(j), Novarro argues that under our recent decision in Burg v. Gosselin, 591 F.3d 95 (2d Cir. 2010), which was issued after this case was briefed and argued, Amore's detention was insufficient to give rise to a claim of false arrest.  That argument is based on our conclusion in Burg that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  Id. at 98.  Novarro misconstrues Burg, which distinguished false arrest claims based on a plaintiff's detention while interacting with law enforcement: "Burg thus does not contend that she was detained or seized while [the officer] wrote out the summons."  Id. at 96 n.3.  Indeed, we noted in Burg that "a plaintiff pleads a seizure when he alleges that a police officer held on to his identification and ordered him to stay put while the police officer wrote out a summons."  Id. (citing Vasquez v. Pampena, No. 08 Civ. 4184, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009)) (internal quotation marks omitted).  There is nothing in Burg, therefore, inconsistent with our conclusion that Amore's detention was a Fourth Amendment seizure for purposes of a false arrest claim.

[14]  "'Deviate sexual intercourse'" meant "'sexual conduct between persons not married to each other consisting of contact

N.E.2d at 62.  In that 1983 decision, the New York Court of Appeals declared the provision unconstitutional.  The court explained that "[t]he object of the loitering statute is to punish conduct anticipatory to the act of consensual sodomy.  Inasmuch as the conduct ultimately contemplated by the loitering statute may not be deemed criminal, we perceive no basis upon which the State may continue to punish loitering for that purpose."  Id., 58 N.Y.2d at 938, 447 N.E.2d at 63; see also People v. Onofre, 51 N.Y.2d 476, 485, 415 N.E.2d 936, 938-39 (1980) (invalidating "consensual sodomy" statute prohibiting "deviate sexual intercourse" on constitutional privacy and Equal Protection grounds because the statute "reach[ed] noncommercial, cloistered personal sexual conduct of consenting adults and . . . permitt[ed] the same conduct between persons married to each other without sanction").

At the time Novarro arrested Amore -- and indeed, until after the issuance of our initial opinion in this appeal -- "[d]espite judicial invalidation, the State of New York ha[d] not formally repealed [section 240.35(3)]."  Casale v. Kelly, 257 F.R.D. 396, 401 (S.D.N.Y. 2009).[15]  The Court of Appeals'

between the penis and the anus, the mouth and penis, or the mouth and the vulva.'"  People v. Onofre, 51 N.Y.2d 476, 484, 415 N.E.2d 936, 938 (1980) (quoting former New York Penal Law § 130.00).

[15]  New York Governor David Paterson signed a measure repealing section 240.35, including subdivision (3), on July 31, 2010.  See Joel Stashenko, Albany Catches Up With Courts, Repeals Voided Loitering Laws, N.Y.L.J., Aug. 4, 2010, at 1.  Prior to its repeal, section 240.35(3) had been enforced as recently as April 6, 2010, by the New York City Parks Department, when the

decision in Uplinger notwithstanding, section 240.35(3) continued to be published in official versions of the New York Penal Law. See N.Y. Penal Law § 240.35(3) (2010). WestLaw and Lexis continued to include the text in their services.[16]

Indeed, more than two years after Amore's arrest for violating section 240.35(3), the New York State legislature amended the wording of this very section,[17] thus treating section 240.35(3) as though it were fully in effect despite the holding of the New York Court of Appeals two decades previously that the section was unconstitutional.[18]

---

Parks Department issued two summonses for violations of that provision. Casale v. Kelly, Nos. 08 Civ. 2173, 05 Civ. 5442, 2010 WL 1685582, at *6, 2010 U.S. Dist. LEXIS 40606, at *28 (S.D.N.Y. Apr. 26, 2010).

In 2003, as part of a sweeping amendment to various New York statutes, the legislature had amended section 240.35(3) by changing the phrase, "deviate sexual intercourse," to "oral sexual conduct, anal sexual conduct." 2003 N.Y. LAWS 264, ch. 264 § 30, eff. Nov 1, 2003. The section had otherwise remained unchanged.

[16] To be sure, McKinney's Consolidated Laws of New York Annotated contains a reference to the fact that section 240.35(3) "has been declared unconstitutional." See 39 McKinney's Penal Law § 240.35, William C. Donnino, "Practice Commentary" (citing Uplinger). WestLaw and Lexis versions of the statute contain similar references. But it is undisputed on this appeal that the copy of the Penal Law provided to Novarro by the police department, published by a professional third-party publisher, contained no such annotation. It is also undisputed that Novarro received no information or instruction regarding the constitutionality of section 240.35(3) prior to the arrest.

[17] See footnote 15, supra.

[18] The United States District Court for the Southern District of New York (Scheindlin, Judge) recently held the City of New York to be in contempt of court for failing to act with reasonable diligence to eliminate enforcement of section 240.35(3) and two related loitering provisions in the Penal Code

20

In determining whether an officer is entitled to qualified immunity, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998); see also Scarbrough v. Myles, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001) ("Police officers are not expected to be lawyers or prosecutors."). It is undisputed that: Novarro did not know that section 240.35(3) was unconstitutional; he had not received instruction or information on the constitutionality of the statute; and he was relying on an accurate, if unannotated, copy of the New York Penal Law when he arrested Amore -- indeed, he was literally reading the Penal Law during the course of the arrest.

The plaintiff and amici suggest the fact that the statute had been held unconstitutional automatically and necessarily strips the officer of immunity. We disagree.

---

that have been ruled unconstitutional, sections 240.35(7) and 240.35(1), after being ordered by that court on June 23, 2005 and May 2, 2008 to do so. See Casale v. Kelly, 2010 WL 1685582, 2010 U.S. Dist. LEXIS 40606, and footnote 15, supra. The decision was based on what the court found to be the inadequate response of the City to two court orders that were issued after the events pertinent to this appeal took place. It did not involve the question of any individual officer's qualified immunity or the question of any conduct or policy of the City of Ithaca. The Casale court noted: "While it is unclear why the New York Legislature has not repealed these void provisions, there can be no question that formal repeal of the Statutes would in all likelihood decrease enforcement of them." Id., 2010 WL 1685582, at *1 n.6, 2010 U.S. Dist. LEXIS 40606, at *5 n.6.

21

We accept that it is the unusual case where a police officer's enforcement of an unconstitutional statute will be immune. And there are suggestions from the Supreme Court and our own court that an officer's entitlement to rely on a statute ordinarily expires when a binding court decision declares the statute unconstitutional. See Michigan v. DeFillippo, 443 U.S. 31, 38 (1979) (state officials "are charged to enforce laws until and unless they are declared unconstitutional"); Vives, 405 F.3d at 117 ("We have held that absent contrary direction, state officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional.") (internal quotation marks, ellipses, and alterations omitted); Crotty, 346 F.3d at 102 ("[U]ntil judges say otherwise, state officers have the power to carry forward the directives of the state legislature") (internal quotation marks and ellipsis omitted).

There are cases, too, from other circuits where qualified immunity was denied to an officer enforcing a statute that, while still "on the books," had previously been declared unconstitutional in a binding court decision. See, e.g., Leonard v. Robinson, 477 F.3d 347, 358-61 (6th Cir. 2007) (denying qualified immunity to a police officer who arrested a citizen for using a "mild profanity while peacefully advocating a political position" at a public assembly, and noting that "it cannot seriously be contended that any reasonable peace officer, or citizen, for that matter, would believe" that such speech

22

constituted a "criminal act," in light of "the prominent position that free political speech has in our jurisprudence and in our society"); Baribeau v. City of Minneapolis, 596 F.3d 465, 479 (8th Cir. 2010) (denying qualified immunity to police officers who arrested citizens for "engaging in an artistic protest").

We have no reason to doubt the conclusions of those courts.  But the statutes at issue and the circumstances of arrest they were considering differ from the facts presented here.  Cf. Brief of Amici Curiae New York Civil Liberties Union & Lambda Legal Defense and Education Fund, Inc. in Support of Appellee's Pet. for Reh'g and Reh'g En Banc ("Amici Br.") at 2-3 (discussing statutes banning interracial marriage that remained on the books until 2000).  None of these cases, nor any other binding authority of which we are aware, stands for the categorical proposition that if a statute has been held unconstitutional, adherence to it by a law enforcement official is, ipso facto, unreasonable for qualified immunity purposes irrespective of the circumstances.  We do not think that to be the law.  Cf. Gertz v. Robert Welch, Inc., 418 U.S. 323, 343-44 (1974) (observing that while a "broad rule[] of general application" was justified in the First Amendment context of that case, "[s]uch rules necessarily treat alike various cases involving differences as well as similarities.  Thus it is often true that not all of the considerations which justify adoption of

23

a given rule will obtain in each particular case decided under its authority.").

We ordinarily impute knowledge of the case law to public officials. See Harlow, 457 U.S. at 819 ("[A] reasonably competent public official should know the law governing his conduct."); Simms v. Village of Albion, N.Y., 115 F.3d 1098, 1106 (2d Cir. 1997) (qualified immunity inquiry focuses on "reasonably well-trained officer"); Salahuddin v. Coughlin, 781 F.2d 24, 27 (2d Cir. 1986) ("Officials are held to have constructive knowledge of established law."). But, as Judge Hartz of the Tenth Circuit has noted, albeit in dissent, "[t]he statement in Harlow that reasonably competent public officials know clearly established law[] is a legal fiction." Lawrence v. Reed, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting) (internal citation omitted). Qualified immunity is appropriate in "those situations in which the legal fiction does not make sense and applying that fiction would create problems that qualified immunity is intended to avert." Id.; cf. Harlow, 457 U.S. at 819 ("[I]f the official pleading the [qualified immunity] defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.").

While we may not consider an official's subjective intent in determining whether he is entitled to qualified immunity, see Crotty, 346 F.3d at 106, we do -- and must -- consider "the particular facts of the case," Robinson, 821 F.2d

24

at 921, including the objective information before the officer at the time of the arrest. In the case at bar, where the defendant acted deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law before taking the actions for which the plaintiff now seeks to hold him accountable, we cannot say that Novarro's arrest of Amore was objectively unreasonable. His immunity stands.[19]

Our conclusion that Novarro's motion for summary judgment on the section 1983 claim against him must be granted on qualified-immunity grounds does not detract, of course, from Amore's remaining failure-to-train claim against the City of Ithaca; indeed the facts upon which it is based may tend to support such a claim. See Rohman v. N.Y.C. Trans. Auth., 215 F.3d 208, 218 (2d Cir. 2000) (granting qualified immunity on section 1983 claim but noting that state-law claim may well succeed). Amore "may be richly entitled to a recovery on that cause of action." Id. at 218-19 (internal quotation marks and citation omitted). But "[t]hat issue is not before us," id. at 219, and it has no bearing on our decision here. Both Amore and the amici urge us to consider that "holding municipalities liable . . . can be quite difficult." Amici Br. at 6; see also Appellee Pet. for Reh'g at 12-13 ("The limited remedy provided by Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978)), is a wholly inadequate alternative. Litigation of Monell claims

---

[19]  In order for his conduct to be immune, Novarro also had to have an objectively reasonable belief that Amore had violated the statute. That subject is discussed in Part IV., infra.

requires significant resources, which many plaintiffs will not possess."). But that is an argument against the Monell doctrine in its present form, not for depriving a law officer acting objectively reasonably of his immunity from suit.[20]

IV. Whether Novarro Had Arguable Probable Cause to Arrest Amore under Section 240.35(3)

Amore argues that even if it was reasonable for Novarro to rely on section 240.35(3), his apprehension of Amore was a false arrest because it was not supported by probable cause. And Amore contends that Novarro is not entitled to qualified immunity because he did not have even "arguable probable cause" for the arrest.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted). Probable cause exists if at the time of the arrest "the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing

---

[20] After Amore and the amici suggested in their briefing on motion for rehearing that stripping Novarro of his immunity was necessary ultimately to persuade the New York legislature to fulfill its responsibility by striking the unconstitutional statute from the books, and without our doing so, the legislature did indeed repeal the statute. See Joel Stashenko, Albany Catches Up With Courts, Repeals Voided Loitering Laws, footnote 15, supra.

an offense."  Beck v. Ohio, 379 U.S. 89, 91 (1964); accord, Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, we examine whether there was "arguable probable cause."  Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id. (internal quotation marks omitted).  In deciding whether an officer's conduct was "objectively reasonable" for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but "we do not consider the subjective intent, motives, or beliefs" of the officer.  Crotty, 346 F.3d at 106.

At the time of Amore's arrest, section 240.35(3) on its face prohibited "[l]oiter[ing] . . . in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . ."  N.Y. Penal Law § 240.35(3) (pre-2003 amendment text)); see also Uplinger, 58 N.Y.2d at 937, 447 N.E.2d at 62. Amore does not dispute that the sexual act he offered to perform on Novarro would have been treated under the statute as "sexual behavior of a deviate nature."

27

Amore argues instead that the facts could as easily support a theory that Novarro solicited him, not the other way around. But in all the versions of the interaction between Amore and Novarro reflected in the record, it is Amore who initiates the conversation with Novarro and who proposes a sexual interaction.

We therefore disagree with Amore's insistence that the several versions of the event are materially "inconsistent." Appellee's Br. 14. On the undisputed facts Novarro had at least arguable probable cause to believe that Amore was "[l]oiter[ing] . . . in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . ."

V. Disorderly Conduct; Harassment

Because we conclude that Novarro is entitled to qualified immunity for arresting Amore pursuant to New York Penal Law § 240.35(3), we decline to reach Novarro's argument that he is entitled to qualified immunity because there was arguable probable cause to arrest Amore for disorderly conduct or harassment.

**CONCLUSION**

For the foregoing reasons, we reverse the district court's denial of Novarro's motion for summary judgment, and remand the cause with instructions to the district court to grant the motion, thereby dismissing the false arrest claim.